UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DOROTHY CAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:13-cv-01127- SEB-MJD |
| | ) | |
| CITY OF MUNCIE and | ) | |
| MUNCIE PARKS DEPARTMENT | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Dorothy Cain (herein "Plaintiff" or "Cain"), by the undersigned counsel, respectfully submits her Response in Opposition to Defendant's Motion for Summary Judgment.

**I. Introduction**

In her Amended Complaint and Demand for Jury Trial, Plaintiff alleges Defendant, City of Muncie ("Muncie") discriminated against her on the basis of sex in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and retaliated against her for engaging in protected activity in violation of Title VII. In light of the Seventh Circuit's strict summary judgment standard, Cain has decided not to pursue her age discrimination claim.

Defendant's Motion for Summary Judgment should be denied as its managers and supervisors fostered and condoned a sexually hostile work environment for Cain and terminated her employment because of complained discrimination. When viewing the facts in a light most favorable to Plaintiff, Defendant's managers and supervisors fostered an atmosphere where sexual harassment was present, and behaviors perpetrated by Plaintiff's co-workers created a sexually hostile work environment which were witnessed and ignored by supervisors. Plaintiff

objected about sexual harassment to her immediate supervisor, Ivan Gregory ("Gregory") which, to reiterate, Gregory witnessed and had taken no action to further prevent it. Defendant enabled this conduct by not providing a sexual harassment policy for hourly-paid employees, and by their failure to train employees on sexual harassment in the workplace.

From 2004 through 2012, Cain worked for the City of Muncie as a part-time laborer at Muncie's Prairie Creek Reservoir (hereinafter "PCR").[1] Plaintiff's overall job performance was very good, and had met the employer's legitimate performance expectations. Prior to 2012, Plaintiff had never received any disciplinary action while employed by Muncie (Ex. A Deposition of Dorothy Cain pp. 62-74; p.116, L. 15-17).

After Plaintiff complained to Gregory and the Mayor of the City of Muncie for not being awarded a full-time position for which she applied to in or about February of 2012 (Ex. A, p.179), Plaintiff became the victim of reoccurring sexual harassment committed by two co-workers Kevin Rabinstein ("Rabinstein') and Nathan Burgess ("Burgess").This harassment began sometime in or about April of 2012. (Ex. A, p. 40).

The harassment consisted of Rabinstein handing the Plaintiff a black and white photograph of himself and Burgess exposing their buttocks (Ex. B). Plaintiff having to witness male employees undressing and walking around in their underwear in the area where Plaintiff worked, and when complaining to Rabinstein about it, Rabinstein asked the Plaintiff if she wanted to "tuck a buck".[2] (Ex. A, p. 45). Plaintiff witnessed male employees exposing themselves and urinating in her presence (Ex. C Affidavit of Dorothy Cain; Ex. D. Affidavit of Eldon Cook). On numerous occasions Rabinstein asked Plaintiff if she wanted to see his 'pierced penis.' Supervisor Gregory was present when these events took place. (Ex. A p.208; Ex D. pp).

---

[1] Previous to 2004, Cain had worked for Muncie on a full-time basis for a number of years (Ex. A. p.62)
[2] implying she was a stripper

Sometime in or about April of 2012, Plaintiff had shown the photograph to J.J.Bonham complaining that something had to be done about it, and that "this is not a good thing to be doing" (Ex. A p 43; Ex. E Dep. Eldon Cook p.19). Sometime during July of 2012, Plaintiff had complained to Gregory (Ex. E p. 18-19). Plaintiff also complained to Muncie's Human Resources Director, Sara Beach about the photograph she was given by Rabinstein and Burgess exposing their 'naked bottoms'. (Ex. F, Dep. Sara Beach, p. 44).

Prior to March of 2012, Plaintiff did not have an employee handbook or written sexual harassment policy (Ex. A p.209). Defendant had never conducted any sexual harassment training until 2013 (Ex. F, p.25; Ex. G, Dep. Ivan Gregory, p. 11-12).

On or about August 30, 2012, Plaintiff filed a charge of sex and age discrimination with the EEOC in connection with her failure to be awarded a full-time position with Defendant, as well as retaliation for disciplinary action taken against Plaintiff after complaining to Muncie's Mayor about not getting a full-time position (Ex. H). While on its face, Plaintiff's August 30, 2012 EEOC charge does not specifically refer to sexual harassment, the EEOC's intake questionnaire (Ex. I) and a witness statement (Ex. D) provided to the EEOC accompanying said charge makes reference to sexual harassment in the workplace.

After Plaintiff complained about not getting a full-time position, and complaining about the hostile work environment created by co-workers to Bonham and her supervisor, Plaintiff was retaliated against when she was issued a number of disciplinary write-ups, allegedly for 'work ethic issues', and was subsequently laid-off and not hired back to work the following year.

**II. Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure states that, summary judgment shall be granted if there is "no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P 56(c). The burden rests squarely with the party moving for summary judgment that there is an absence of evidence to support the nonmoving party's case. *Doe v. R.R. Donnelley & Sons, Co.,* 42 F. 3d 439, 443 (7th Cir. 1994). To withstand a motion for summary judgment, nonmovant need not match movant witness for witness, nor persuade the court that nonmovant's case is convincing, nonmovant need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact. *Waldridge v. American Hoechst Corp.,* 24 F. 3d 918, 921 (7th Cir. 1994) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The record and all reasonable inference that may be drawn from it are viewed in a light most favorable to the party opposing the motion. *Liberty Lobby,* 477 U.S. at 247.

In the context of summary judgment under Rule 56, the court must review the record "taken as a whole" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). The standard for granting summary judgment "mirrors" the stand for judgment as a matter of law, such that "the inquiry under each is the same" *Reeves,* 530 U.S. at 150; *Liberty Lobby,* 477 U.S.at 250; *see also Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Deloach v. Infinity Broadcasting* 164 F. 3d 398, 400 (7th Cir. 1998).

In an employment discrimination case, and employee can survive summary judgment on the issue of pretext if he or she produces evidence that calls into question the employer's proffered reasons for the adverse employment action. *O'Connor v. DePaul University,* 123 F. 3d 665, 670 (7th Cir. 1997). "If the employee succeeds in casting doubt on the proffered reasons for adverse action, the ultimate question of whether the employer discriminated against the employee must be left to a jury to consider. *Id.* Moreover, summary judgment is particularly

inappropriate for settling issues of intent or motivation. *See Connor v. Reinhard,* 847 F. 2d 384, 393, 396 (7th Cir. 1988), *cert denied,* 488 U.S. 856 (1988); *Kephard v. Institute of Gas Technology,* 630 F.2d 1217, 1218 (7th Cir. 1980). (per curiam), *cert denied,* 450 U.S. 959 (1981), especially where, as here, the claim is brought under a statute that allows for a jury trial.

With respect to summary judgment motions in employment discrimination cases, the burden on the moving party is increased. In *Courtney v. Biosound, Inc.,* 42 F. 3d 414 (7th Cir. 1994), the Court described the standard to be applied in ruling on summary judgment motions in discrimination cases. In interpreting the ruling of the Supreme Court in *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993), the Court stated that:

> "…once the Plaintiff has cast doubt on the employer's proffered reasons, the issue of whether the employer had discriminated against the Plaintiff is supposed to be determined by the jury not the court. Thus… in order to survive a summary judgment motion, the Plaintiff need only produce evidence from which a rational fact-finder could infer that the company lied' about its proffered reasons for the adverse employment action."

The Court also stated that, "**a grant of summary judgment which turns on discriminatory intent should be approached with special caution. The Summary judgment standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues,**" *Courtney* at 423, (emphasis added). Since evidence supporting a claim of discrimination is rare, affidavits and depositions must carefully scrutinize for circumstantial proof which, if believed, would show discrimination." *Id.* at 418.

### III. Plaintiff did not fail to exhaust her administrative remedy for sexual harassment when bringing her first charge of sex discrimination before the EEOC.

Defendant is not entitled to summary judgment because, as Plaintiff argues here, her EEOC charge was sufficient because she checked "sex" as the basis of her discrimination against her, and sexual harassment is a type of discrimination because of sex.

5

As a general rule, a plaintiff may not bring claims under Title VII that were not included in the charge filed with the EEOC. *Harper v. Godfrey* 45 F. 3d 143, 147 (7th Cir. 1995). *Cheek v. Western & S. Life Ins. Co.,* 31 F. 3d 497, 500 (7th Cir. 1994). The purpose of this rule is twofold: it affords the EEOC the opportunity to quickly settle the dispute with the employer and puts the employer on notice of the charges against it. *Harper,* 45 F. 3d at 148; *Rush v. McDonald's Corp.,* 966 F. 2d 1104, 1110 (7th Cir. 1992). Even if the charge does not contain the claim, however, a court must allow the uncharged claim if it is "like or reasonably related" to the EEOC charge and can reasonably be expected to grow out of an EEOC investigation of the charges. *Harper,* 45 F. 3d at 148; *Cheek,* 31 F. 3d at 500; *Rush*, 966 F. 2d at 1111.

The Plaintiff asks the Court to consider her 'Intake Questionnaire' and a statements provided to EEOC Investigator James Love by one of Plaintiff's co-worker as part of her charge (Ex. D). These documents clearly makes reference to sexual harassment.[3] The charge questionnaire, at paragraph (13) clearly refers to 'sexual harassment' when referring to alleged discriminatory incidents by co-worker Rabinstein. Plaintiff further checked box number 2 on the Intake Questionnaire which states:

> "I want to file a charge of discrimination, and I authorize the
> EEOC to look into the discrimination I described above…"

A court may consider "[a]llegations outside the body of the charge …when it is clear that the charging party intended the agency to investigate the allegations." *Cheek,* 31 F.3d at 502. To date, the case law discussing this rule reveals only one method by which the charging party can show her intent to have the agency investigate the allegation: the charging party must somehow incorporate the outside allegation with the charge itself.

---

[3] Plaintiff's co-worker Eldon Cook's statements makes reference to the 'penis ring' remarks; the photograph of male employees exposing their buttocks; and, male employees urinating in Plaintiff's presence.

Courts frequently consider allegations found outside the body of the charge in situations where the charging party made an attempt to incorporate the documents containing the allegations into the charge itself. In such situations, both purposes behind the requirement of filing an EEOC charge claim prior to filing suit are fulfilled. The EEOC is, or should be, fully informed of what the charging party's complaint is. If the specific charge allegation is not found in the body of the charge, the EEOC can simply read through the documents filed with the charge to locate additional allegations. The EEOC, then, can pursue whatever investigation or attempts at conciliation with the employer it deems necessary.

When the Plaintiff filed her charge of discrimination on or about August 30, 2012, she did not prepare the charge itself; it was prepared and typed up by EEOC investigator James Love. Plaintiff does not know why sexual harassment was omitted from the face of the charge, but Plaintiff believed at that time, her charge was filled out correctly (Ex. C). Despite the fact that EEOC Investigator Love had not placed the sexual harassment allegation into the body of the charge itself, the missing allegation appears in the documents filed with the charge.

Should the Court find that Plaintiff's contentions are in fact true, which they must be taken as such in deciding a motion for summary judgment, then the Plaintiff has done everything a person can reasonably be expected to do to properly present her claim to the EEOC. The standard allowing the Courts to look beyond the body of the complaint only requires an objective showing that "the charging party intended the agency to investigate the allegations." *Sickinger v. Mega Systems,* 951 F. Supp. 153, 157 (N.D. Ind. 1996).

**IV. Defendant was on notice of the sexual harassment and failed to exercise reasonable care in remedying the harassment.**

Muncie is not entitled to summary judgment because it knew of the sexual harassment suffered by Cain and took no action to prevent it. Further, Muncie's failure to provide Plaintiff

with a sexual harassment policy, and not training any of its employees on sexual harassment until 2013; this would enable a reasonable jury to conclude that Muncie did not exercise reasonable care in discovering sexual harassment.

In cases involving harassment by a co-worker, an employer is liable if "it negligently failed to take reasonable steps to remedy the harassment." *Loughman v. Malnati Org., Inc.,* 395 F. 3d 404, 407 (7th Cir. 2005). An employer acts negligently if it fails "to take appropriate remedial measures once apprised of the harassment." *See Rhodes v. Ill. Dep't. of Transp.,* 359 F. 3d 498, 506 (7th Cir. 2004).

A jury could infer that an employer had notice – actual or constructive – under circumstances were the harassment were so sufficiently obvious. *Benitez v. American Standard Circuits, Inc.,* 678 F. Supp. 2d 745, 759 (N.D. IL 2010); *Zimmerman v. Cook County Sheriff's Dep't.* 96 F. 3d 1017, 1018 (7th Cir. 1996). Notice to an employee of the harassment – whether actual or constructive – is deemed notice to the corporation when the information is either:

> (1) Come to the attention of someone who (a) has under the terms of his employment, or (b) is reasonably believed to have, or (c) is reasonably charged by law with having, a duty to pass on the information to someone within the company who has the power to do something about it; or (2) come to the attention of someone."

*Young v. Bayer Corp.* 123 F. 3d 672, 674 (7th Cir. 1997).

In *Benitez,* the Court relied on *Young* in holding that even if not designated in a harassment policy complaint channel, "[i]f a [department head] receives such a complaint he or she would be obligated by elementary principles of management and good sense to either resolve the problem himself or refer it to someone within the company who can, *Benitez,* 678 F. Supp. 2d 745, 761.

In the instant case, a reasonable jury could conclude that Muncie had both actual and constructive notice of sexual harassment. A jury could infer that Muncie knew of the harassment because it was open and notorious with supervisor Ivan Gregory witnessing the harassing behaviors and taking no action to prevent it (Ex. A p.41; p.45; p. 195; pp. 207-209). Gregory had a duty to pass on the information to someone with the power to take action. Plaintiff had also complained J.J. Bonham, who she reasonably believed to hold a position of authority, as well as to Human Resources Director Beach (Ex. A pp.210-212).

The harassment of the Plaintiff by co-workers Burgess and Rabinstein -- handing the Plaintiff a photograph of themselves exposing their buttocks, male employees undressing in Plaintiff's presence, the 'tuck a buck' and 'pierce penis' comments, and urinating in Plaintiff's presence, were all were made with Gregory's knowledge (Ex. E pp 11-17). The pervasiveness of the harassment alone may support an inference that the employer must have known of it. *See Meritor Savings Bank v. Vinson,* 477 U.S. 57, 72 (1986). A reasonable jury could also conclude that Muncie was willfully ignorant of the harassment by refusing to issue a sexual harassment policy to the Plaintiff; and, not to provide any instruction, or training to its employees, supervisors and managers as to what sexual harassment was and how to respond to it until 2013.

Plaintiff had complained to another individual she reasonably believed to have the duty to take action and pass on her complaint of sexual harassment. Plaintiff complained to J.J. Bonham (Ex. A pp.43; Ex E pp. 19-20). At the time of Plaintiff's initial complaint, Plaintiff believed that Bonham had some position of responsibility at the PRC (Ex. C and D). Under *Young,* knowledge of sexual harassment to these employees is sufficient to charge Muncie with notice of the sexual harassment as Plaintiff reasonably believed them to be charged with a duty to pass on complaints of sexual harassment.

Plaintiff complaining to Supervisor Gregory alone is sufficient to put Muncie on notice. A supervisor's knowledge of sexual harassment is imputed to Muncie under *Young* as a "department head" as they are required to take action on complaints of sexual harassment. This is consistent with Muncie's Exempt/Confidential Employee Handbook's Equal Employment Opportunity Policy which places responsibility for implementation and compliance with Muncie's sexual harassment policy with supervisor Gregory. (Ex. J).

At the time Plaintiff complained to both Bonham and Gregory, Muncie had not provided the Plaintiff with any direction as to where to take her complaints and a reasonable jury could conclude that Plaintiff acted reasonably due to a lack of direction as to where to go. A jury could find that Muncie acted unreasonably in discovering the harassment by failing to inform the Plaintiff of any point person or complaint channel for harassment; by failing to provide Plaintiff with an employee handbook; or with any sexual harassment training.

"Under Title VII, an employer need not have actual knowledge of the harassment; an employer is considered to have notice of sexual harassment if the employer – or any of its agents or supervisory employees – knew or should have known of the conduct." *Brunson v. Bayer Corp.,* 237 F. Supp. 2d 192, 202 (D. Conn. 2002) citing *Distasio v. Perkin Elmer Corp.,* 157 F. 3d 55, 63 (2nd Cir. 1998).

A reasonable jury could further conclude that by not taking any action in response to Plaintiff's complaints to either Bonham, Gregory and/or Beach, Muncie was on notice of the harassment and acted negligently. Taking no action whatsoever cannot be said to be reasonable steps to remedy harassment. *See Carr v. Allison Gas Turbine Div. General Motors Corp.,* 32 F. 3d 1007 (7th Cir. 1994) (Employer's response deemed negligent when no discipline issued to alleged harassers).

### V. A reasonable jury could conclude that the sexual harassment complained of by Cain rises to the level of a hostile work environment.

The photograph of co-workers exposing their buttocks, witnessing male co-workers undressing and urinating in Plaintiff's presence, and the remarks about a 'penis ring' and implying Plaintiff was a stripper made by Rabinstein and Burgess were sufficiently severe to alter the terms and conditions of Cain's employment.

To survive summary judgment on Plaintiff's sexual harassment claim, Cain must show: "(1) she was subject to unwelcome harassment; (2) the harassment was based on sex; (3) the harassment was severe and pervasive as to alter the conditions of the employee's work environment by creating a hostile or *abusive situation*; and (4) there is a basis for employer liability." *Williams v. Waste Management of Ill., Inc.,* 361 F. 3d 1021, 1029 (7th Cir. 2004).

When determining whether the conduct objectively created a hostile work environment, a court must consider the frequency of the discriminatory conduct, whether it was physically threatening or humiliating rather than simply an offensive utterance, and whether it unreasonably interfered with an employee's work performance." *Harvey v. Maytag Corp.,* 105 Fed. Appx. 863, 867 (7th Cir. 2004)

The instant case involves a series of offensive, degrading and humiliating comments by and behaviors perpetrated by co-workers Rabinstein and Burgess which began on the heels of Plaintiff complaining to her supervisor and Mayor about not being award the full-time position that she applied for, and was promised by her supervisor (Ex. A pp.188-190).

The Supreme Court established rules for deciding this issue [hostile work environment] in its decision in *Harris v. Forklift Sys.* 510 U.S.17 (1993). There it is observed that "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

severe or pervasive to create an abusive working environment, Title VII is violated" *Harris* 510 U.S. at 21. In carving out a middle ground between making actionable any conduct that causes a tangible psychological injury, the Court emphasized that "Title VII comes into play before the harassing conduct leads to a nervous breakdown." *Harris* 510 U.S. at 22. It is enough that the work environment is objectively hostile or abusive (and subjectively perceived as such). In answering that question, a court must consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." 510 U.S. at 23. *See also Shanoff v. Illinois Dept. of Human Services* 258 696, 704 (7th Cr. 2001).

The importance of considering the entire context of the workplace was later underscored by the Supreme Court in *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75,140 (1998). There, in the context of a sex harassment case, the Court observed that "the prohibition of harassment on the basis of sex…forbids behavior so objectively offensive as to alter the conditions of the victim's employment. 523 U.S. at 81. An inquiry into the objective severity of harassment, it continued, "requires careful consideration of the social context in which the particular behavior occurs and is experienced by its target." *Id.* "The real social impact of the workplace behavior often depends on a constellation of surrounding circumstances, expectations and relationships…" 523 U.S. at 82. *See also Clark County School District v. Breeden* 532 U.S. 268, 270 (2001). (stressing again the need to consider all the circumstances). *Cerros v. Steel Techs., Inc.,* 288 F. 3d 1040, 1045 (7th Cir. 2002).

[A] sufficiently severe episode may occur as rarely as once, S*ee Smith v. Sheahan,* 189 F. 3d 529, 533 (7th Cir. 1999), while a relentless pattern of lesser harassment that extends over a period of time also violates the statute." *Cerros,* 288 F. 3d at 1046.

The present matter is similar to *Cerros*. A racial discrimination case. Cerros was subjected to racial epithets and graffiti, and his tires were slashed in the company parking lot. Cerros reported the tire slashing to the company, but the company did not investigate further. The district court granted summary judgment to the employer, calling the racial epithets, graffiti and tire slashing "relatively isolated and thus insufficient to show a hostile work environment." *Cerros*, 288 F. 3d at 1046. The Seventh Circuit reversed, stating "[w]e believe that such a finding may have resulted from a misunderstanding about the legal threshold for harassment cases; like the lower courts in *Harris,* the district court here may well have set the bar too high as a matter of law. This court has found severe verbal harassment of the sort identified by the district court to be prohibited harassment, even when it did not occur every day." *Cerros* 288 F. 3d at 1047.

In the instant case, there were a series of events that made the Defendant's workplace a hostile for Ms. Cain. First, there was the series of events listed above surrounding co-worker's treatment of Ms. Cain, and the Defendant's objectionable and inadequate response. After her complaints to Bonham and Gregory, Ms. Cain's supervisor began to watch her more closely, and suddenly other employees began to complain about her. Ms. Cain was shortly thereafter disciplined for job performance issues and later laid-off and not returned to work the following year.

### VI. A reasonable jury could infer that Muncie disciplined Plaintiff because of her complaining of sexual harassment.

A reasonable jury could conclude that Muncie disciplined the Plaintiff because of her complaining to Gregory and Bonham about sexual harassment. Plaintiff's claims should survive

summary judgment under both the direct and indirect method. Under the direct method "the Plaintiff may show either direct or circumstantial evidence that points to the conclusion that the employer acted as it did for illegal reasons." *Zafar Hasan v. Foley & Lardner LLP,* 552 F. 3d 520, 527 (7th Cir. 2008). Circumstantial evidence under the direct method is evidence that "allows a jury to infer intentional discrimination by the decision-maker." *Rogers v. City of Chicago,* 320 F. 3d 748, 753 (7th Cir. 2003). The Seventh Circuit has identified "suspicious timing, ambiguous statements oral or written, behavior towards or comments directed at other employees in the protected group, and other bits and pieces from which discriminatory intent might be drawn," as types of circumstantial evidence that when viewed in the totality and taken together may compose "a convincing mosaic of discrimination against the Plaintiff." *Troupe v. May Dep't Stores,* 20 F. 3d 935, 937 (7th Cir. 2000).

Under the indirect method Plaintiff must demonstrate genuine issues of material fact that (1) Plaintiff is in a protected class, (2) Plaintiff was performing her job consistent with defendant's expectations, (3) plaintiff suffered an adverse action, and (4) circumstances suggest that the adverse action was motivated by plaintiff's sex. *McDonald Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See also Timmons v. General Motors Corp.,* 469 F. 3d 1122, 1127 (7th Cir. 2006).

In the Seventh Circuit, a plaintiff claiming retaliation may prevent summary judgment under either the direct or indirect method of proof. *Stone v. City of Indianapolis Pub., Utils. Div.* 281 F. 3d 640, 644 (7th Cir. 2002). To establish a *prima facie* case of retaliation under the direct method, a plaintiff must establish (1) she engaged in a statutorily protected activity; (2) an adverse employment action resulted; and (3) a causal connection between the protected activity

and the adverse employment action. *Tomanovich v. City of Indianapolis,* 457 F. 3d 656, 662 (7th Cir. 2006).

### 1. Cain Engaged in Protected Activity

Without having ever been afforded with any direction as to where to take her complaints or having any training on sexual harassment by the City of Muncie, Cain engaged in protected activity when she complained about the harassment to Bonham and Gregory. Bringing a complaint with an employer may constitute statutorily protected activity if the complaint indicates the discrimination occurred because of *sex,* race, national origin, or some other protected class. *Gleason v. Mesirow,* 118 F. 3d 1134, 1147 (7th Cir. 1997) (citing *Dey v. Colt Constr. & Dev. Co.,* 28 F. 3d 1446, 1457 (7th Cir. 1994). Cain's complaints to Bonham and Gregory about Rabinstein and Burgess occurred sometime in April of 2012. Later, sometime in June of 2012, Cain had also complained to Human Resources Director Beach about the photograph -- all had a duty to act.

Cain has established that Gregory and Bonham had knowledge of the harassment. Although for purposes of summary judgment, Gregory and Bonham both deny ever had any knowledge that Cain had complained about harassment at work (Ex. G, p.21; Ex. K, Dep. J.J. Bonham p.13). Therefore, it is clear that Muncie had notice of Cain's complaint.

Therefore Cain has established the first prong of her *prima facie* case of retaliation under the direct method of proof.

### 2. Cain Suffers Adverse Employment Actions

For purposes of summary judgment, there is no dispute that Cain suffered more than one adverse employment action. Cain was: (1) subjected to disciplinary write-ups; (2) was laid off

while other employees remained employed at the season's end; and (3) Cain was not called back to work the following year.

It is well-settled that a plaintiff claiming retaliation need not establish her *prima facie* by showing she suffered a "tangible employment action" such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Northern & Santa Fe Ry. v. White,* 126 S. Ct. 2405, 2413 (2006). Instead, a plaintiff claiming retaliation need only show that a reasonable employee would have found the challenged action materially adverse. *Id.* at 2415. In other words, a plaintiff must establish that the adverse employment action might have dissuaded a reasonable worker from making a complaint of discrimination. *Id.* In the case at bar, it is undisputed that Cain was allegedly disciplined for 'poor work ethic'.

Therefore, Cain has satisfied the second prong of her *prima facie* case of retaliation under the direct method of proof.

### 3. A Casual Connection Exists Between Cain's Protected Activities and the Adverse Employment Action She Suffered

#### i. Suspicious Timing

As noted above, suspicious timing is a form of circumstantial evidence a plaintiff may employ to establish that a causal connection exists between her protected activity and the adverse employment action. In the case at bar, the evidence presented by both parties establish that Defendant engaged in a pattern of issuing Cain discipline after Cain had complained to Bonham and Gregory in April of 2012. Within a matter of weeks, Cain was issued discipline for 'poor work ethic' this, after many years of good job performance. Thereafter, Cain was laid-off on the heels after filing her charge of discrimination on August 30, 2012. Cain was then not returned to work, as in previous years, after filing her EEOC charge in October of 2012.

16

Plaintiff was targeted for excessive criticism and discipline for a poor work ethic with the aim of forcing her out of a job Plaintiff testified during her deposition that she was attempting to show other employees how to perform the work correctly in the interest of public safety, and was following directions of a supervisor (Ex. A pp. 125-150).

These incidents, at first, didn't appear to be violations that could be the basis of a lawsuit, however, after it had been repeated on a number of occasions, it became clear that it was a violation of Title VII (retaliation). One of the disciplinary warnings issued to Plaintiff on or about July 5, 2012 was the result of a written statement provided by one of the accused harassers Kevin Rabinstein, which for some inexplicable reason appears on PRC letterhead (Ex. G, p. 37). The last disciplinary warning issued to Plaintiff on or about July 16, 2012 by supervisor Gregory was dated and signed before Human Resources Director Sara Beach had completed her investigation into the matter (Ex. G p. 41). Shortly after Cain filed her first EEOC charge in August of 2012, Plaintiff was laid off in October 2012. After Cain filed her October 2012 EEOC charge, Cain was not recalled back to work in the 2013 season. Therefore, the Plaintiff suffered a materially adverse employment action.

First, In February 2012, Plaintiff complains to the Mayor of Muncie about not being award a full-time position for which she applied, but was told by her supervisor she was the best candidate for the position. In March of 2012, Plaintiff complains to J.J. Bonham and supervisor Gregory about the hostile work environment created by co-workers Rabinstein and Burgess. Note that a telling temporal sequence can demonstrate a causal link. *See Alexander* at 195. The Defendant was on notice of Plaintiff's complaints of discrimination. Therefore, the existence of a number of common factors between the protected activity and the adverse action defines a connection. The telling temporal sequence of no disciplinary history before Plaintiff complains,

then discipline and termination after complaining, all within a relatively short period of time, clearly establishes a causal connection.

The Plaintiff proves a causal connection between the protective act and the adverse act by pointing to the following factors: Supervisor Gregory is a common factor between the protective act and adverse action, a telling temporal link establishing a causal connection. All evidence and inferences must be construed in a light most favorable to the non-moving party. *See United States v. Diebold, Inc.* 369 U.S. 654, 655 (1962).

**Conclusion**

WHEREFORE, Plaintiff requests that this Honorable Court deny Defendant's motion for summary judgment because a reasonable jury could conclude that (1) Defendant was negligent in discovering the sexual harassment by failing to provide a sexual harassment policy to the Plaintiff and failing to implement training on sexual harassment for its employees; (2) the harassment was so pervasive Defendant must have known about it; (3) complaints made by Cain to Bonham, Gregory and Beach were sufficient to put the City of Muncie on notice of the harassment; (4) Cain was subjected to a sexually hostile work place; and (5) Defendant retaliated against the Plaintiff by their disciplining and terminating Cain because of her complaints of sexual harassment.

Respectfully submitted,
PANICO LAW, LLC

/s/John Robert Panico
John Robert Panico 24039-48
Attorney for Plaintiff
9465 Counselors Row, Suite 200
Indianapolis, IN 46240
(317) 759-7464
jpanico@discriminationlawgroup.com

## CERTIFICATE OF SERVICE

       I hereby certify that on the 30th day of October 2014 a copy of the forgoing was filed electronically. Notice of the filing will be sent to the following counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

Coots Henke & Wheeler, P.C.
255 East Carmel Drive
Carmel, IN 46032
(317) 844-4693
mhinkle@chwlaw.com
bgibson@chwlaw.com

                                            S/John Robert Panico
                                            JOHN ROBERT PANICO 24039-48
                                            Counsel for Plaintiff
                                            9465 Counselors Row, Suite
                                            Indianapolis, IN 46240
                                            (317) 759-7464
                                            jpanico@discriminationlawgroup.com