UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DOROTHY CAIN, ) | | |
|       Plaintiff, ) | | |
| ) | | |
| vs. ) | 1:13-cv-01127-SEB-MJD | |
| ) | | |
| CITY OF MUNCIE and ) | | |
| MUNCIE PARKS DEPARTMENT, ) | | |
|       Defendants. ) | | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, City of Muncie and Muncie Parks Department, by counsel, submit the following reply brief in support of their Motion for Summary Judgment:

**I.    Plaintiff Failed to Include a Statement of Material Facts in Dispute.**

Pursuant to L.R. 56-1(b), Plaintiff was required to include a "Statement of Material Facts in Dispute" in her brief. Although Plaintiff included some allegations in her "Introduction," only some of the allegations were supported by a citation to a discovery response, a deposition, an affidavit, or other admissible evidence. Because Plaintiff has not specifically controverted Defendants' statement of material facts not in dispute with a statement of material facts in dispute supported by admissible evidence and citations thereto, the facts as claimed and supported by admissible evidence by Defendants should be admitted without controversy. L.R. 56-1(f).

**II.    Plaintiff Failed to Support Certain Facts.**

Not only did Plaintiff fail to provide a state of material facts in dispute, but her Introduction, which contained some citations, failed to support several of her assertions with a citation to the record. Moreover, the citations for some of the assertions are not supported

by the record. Specifically, the following assertions are unsupported and cannot be considered material facts:

>  1. There is no designated evidence to support that Plaintiff's overall job performance was very good, and had met the employer's legitimate performance expectations. (Response, p. 2).
>
>  2. Plaintiff alleged that prior to 2012, Plaintiff had never received any disciplinary action while employed by Muncie. (Response, p. 2). Plaintiff cited to her deposition to support such assertion, however, she first testified that she "[didn't] recall" whether she had received a reprimand before 2012, but then stated she "[didn't] believe that she had. (Pl's Exh. A, p. 116:10-17).
>
>  3. There is no designated evidence to support that Kevin Rabenstein implied that Plaintiff was a "stripper" when Rabenstein allegedly asked Plaintiff if she wanted to "tuck a buck." It seems that if any implication would have been made by the purported comment, it would have been that *Rabenstein* was the "stripper."
>
>  4. Plaintiff's assertion that she complained to Muncie's human resources director about the photographs that she was given by Rabenstein showing Rabenstein and Burgess mooning a camera is not totally supported by the designated evidence. (Response, p. 3). Although Plaintiff testified that she *told* Beach about the photographs, Plaintiff confirmed that she neither showed nor provided the photographs to Beach.[1] (Defts' Exh. B, pp. 218:17-219:7).
>
>  5. Plaintiff's assertion that did not have an employee handbook or written sexual harassment policy prior to March 2012 is not supported by the designated evidence. (Response, p. 3). Plaintiff testified that she thought she was "handed a handbook is when [she] was hired in . . . full time years ago." (Defts' Exh. B, p. 209:15-18). Moreover, Plaintiff's assertion that "she did not have …a handbook or sexual harassment policy" does not mean she was never given one. (Response, 3).[2]
>
>  6. There is no designated evidence to support the allegation that the City of Muncie refused to issue a sexual harassment policy to Plaintiff. (Response, p. 9).

---

[1] Additionally, Beach testified that Plaintiff mentioned that she had a photograph of a "naked bottom" while in the midst of a rant about being disciplined, and that Plaintiff did not know when she received it, how she received it, nor did she provide any follow up information, despite Beach's request, so that Beach could conduct an investigation. (Defts. Exh. E, pp. 44:8-49:6).

[2] In her Response at p.3, Plaintiff refers to Exh. A, p.209. This page is not contained in her designated materials.

Plaintiff makes several other unsupported allegations throughout her Response and those are addressed below.

### III. There Is Not A Heightened Summary Judgment Standard for Employment-Related Cases.

Plaintiff states that there is a heightened summary judgment standard for employment discrimination cases, which is inaccurate. (Response, p. 5). The Seventh Circuit has emphasized that there is no heightened summary judgment standard for employment-related cases. Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1396 (7th Cir. 1997). Moreover, a non-movant cannot defeat summary judgment "merely by pointing to self-serving allegations without evidentiary support." Cliff v. Board of School Comm'rs, 42 F.3d 403, 408 (7th Cir. 1994).

### IV. The Undisputed Facts Show That Summary Judgment Should Be Entered in Defendants' Favor for Any Sexual Harassment Claim.

Defendants argued in their Brief in Support of Defendants' Motion for Summary Judgment that (1) Plaintiff's sexual harassment claims must be dismissed because the claims were not included in Plaintiff's EEOC Charges, and (2) the conduct alleged by Plaintiff is not severe or pervasive and does not arise to a hostile work environment. (Brief, pp. 9-17). In response, Plaintiff addressed both arguments but also included an argument alleging that Defendants "were on notice of the sexual harassment and failed to exercise reasonable care in remedying the harassment." However, Defendants, have not raised a dispositive issue under T.R. 56 based on an absence of negligence in either discovering or remedying the harassment. Here, the question is not whether Defendants were aware of the misconduct but whether the conduct constituted actionable sexual harassment because it created a hostile work environment. Rather, if the court finds that Plaintiff's sexual harassment claims were

not included in Plaintiff's three EEOC Charges and/or that the conduct alleged by Plaintiff in her complaints does not rise to the level of a hostile work environment, then summary judgment must be entered in Defendants' favor regardless of whether Defendants knew or should have known about the alleged conduct.

> A. *Plaintiff Failed to Exhaust her Administrative Remedies Relative to her Sexual Harassment Claims and the Court Should Not Consider Allegations Outside of Plaintiff's EEOC Charges as a Means of Salvaging her Waived Claims.* .

Prior to filing her initiating complaint on July 15, 2013, Plaintiff filed *three* EEOC charges, none of which mention *any facts* supportive of a charge for sexual harassment or *any* of the incidents of alleged harassment that Plaintiff included in her complaint, amended complaint and self-serving affidavit. As an initial matter, Plaintiff concedes that her August 30, 2012 EEOC charge does not refer to her being sexually harassed. (Response p. 3).[3] Nevertheless, without citing any authority, Plaintiff argues that her "EEOC Charge was sufficient because she checked 'sex' as the basis of her discrimination against her, and sexual harassment is a type of discrimination because of sex." (Response, p. 5). The Seventh Circuit squarely rejected such an argument in Vela v. Village of Sauk Village, 218 F. 3d 661, 664 (7th Cir. 2000). *Citing* Cheek v. W. & S. Life Ins. Co., 31F.3d 497 (7th Cir. 1994).

Next, since Plaintiff's charges offer no hint of potential sexual harassment, she attempts to salvage this claim by asking the Court to consider the Intake Questionnaire that she completed along with statements provided by a co-worker, Eldon Cook, as part of her EEOC Charge. (Response, p. 6).

> i. Intake Questionnaire Does Not Support a Charge of Sexual Harassment.

---

[3] She also admits that she believed the charge was correct when she signed it. (Defts. Exh. D, ¶10).

-4-

Plaintiff did not mention any of the alleged incidents of sexual harassment in the Intake Questionnaire (Plf. Exh. I). She did not identify "sexual harassment" or anything remotely resembling sexually offensive conduct in response to questions 4-8 of the Intake Questionnaire that inquired about the reason and basis for the claim of discrimination. Indeed, the Intake Questionnaire consists of 4 pages of information and the *only* place that Plaintiff uses the term "sexual harassment" is on the fourth page in response to a question about witnesses. (Plf. Exh. I- Question 13). Even then, Plaintiff provides no information or description of what is meant by "Sexual Harassment."

        ii.        Statements by Cook Should Not Be Allowed to Resurrect a Waived Charge.

There were statements that were purportedly provided by Cook to the EEOC that referenced sexual harassment, but it is unknown when they were provided to the EEOC, whether the EEOCC received the statements and, if so, when they were received. However, it is undisputed is that the EEOC did not notify the City about Plaintiff's sexual harassment allegations. (Defts' Exh. A, ¶ 25). Indeed, Plaintiff has not designated any evidence to show that the Intake Questionnaire and Cook's statements were attached to or part of Plaintiff's three EEOC Charges and/or were provided to Defendants prior to Plaintiff filing her complaint and amended complaint.

A court can consider allegations outside of the body of the charge "when it is clear that the charging party intended the agency to investigate the allegations." Cheek, 31 F.3d 497, 502 (7th Cir. 1994). However, that generally occurs when the plaintiff completes a sworn affidavit that is attached to the EEOC charges or handwrites statements on an EEOC charge. For example, the Seventh Circuit held in Cheek that the plaintiff's statement in a sworn affidavit she filed in support of the charge could be considered to determine whether

she had alleged sex discrimination (but found that her statement did not support an allegation of sex discrimination). Id. at 502. *See also* Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992) (court considered a three-page handwritten "EEOC Affidavit" containing "explicit reference" to the types of discrimination alleged in the complaint that the plaintiff had submitted to the EEOC on the same day that she filed her EEOC charge); Box v. A & P Tea Co., 772 F.2d 1372, 1375 (7th Cir. 1985) (court considered handwritten addition suggesting sex discrimination to typed EEOC Charge of race discrimination).

Although Plaintiff does not necessarily cite to any case to support her position that her Intake Questionnaire and Cook's statements should be considered by the court, she appears to use some language from Sickinger v. Mega Systems, Inc., 951 F. Supp. 153 (N.D. Ind. 1996) in her Response.[4] In Sickinger, the court distinguished between a Charge/Intake Questionnaire and an affidavit such as the affidavit in Cheek, and noted that the Charge Questionnaire was something that the plaintiff never intended to include with the charge. Sickinger, 951 F.Supp. at 157. In Sickinger, the plaintiff's EEOC Charge, drafted by an EEOC representative, failed to include that the plaintiff had been retaliated against when she was terminated. The plaintiff had specifically indicated that she "had attempted to discuss [the denial of a position and a promotion because of her sex] with the owner of the company, about two weeks later I was terminated" in her Charge Questionnaire *in response* to the questions "What action was taken against you that you believe to be discriminatory?" and "What harm, if any, was caused to you or others in your work situation as a result of that action?" Id. The plaintiff alleged that she had discussed this allegation with the EEOC representative, but that the EEOC representative did not include the allegation in the charge and indicated in the charge that the latest date that the discrimination took place was a date

---

[4] See first full paragraph of page 7 of Response.

prior to the termination date. The plaintiff alleged that she specifically "called it to his attention as I did not believe the date he put down was correct, and I was assured by him that the charge form was filled out correctly." Id.

The Court acknowledged the goal of formal employer notification would appear to be frustrated if the Court considered the plaintiff's Charge Questionnaire, but concluded that the plaintiff "has done everything a person can reasonably be expected to do to properly present her claim to the EEOC." Id. Thus, the Court allowed the plaintiff to present her retaliatory discharge claim to the Court reasoning that (1) the plaintiff had "*properly and clearly presented her claim for retaliatory discharge*" in the questionnaire, (2) the EEOC representative "affirmatively misled the Plaintiff into believing that she had properly filed her retaliatory termination claim," and (3) the defendant "must have known that [the plaintiff's] charge had something to do with her termination" given that it was filed eight days after her termination. Id. at 158.

Not only is Sickinger an outlier and not controlling, the facts in Sickinger are distinguishable. *See* Vela, 218 F.3d at 664 (noting that the court had looked beyond the EEOC charge in Sickinger and at a Charge Questionnaire "under particular circumstances where the employer could not claim surprise at the claim fully stated in the questionnaire, but not in the charge.").

Unlike the plaintiff in Sickinger, Plaintiff did *not* do everything that she reasonably could be expected to do to present a sexual harassment claim to the EEOC. First, unlike the plaintiff in Sickinger, who properly and clearly presented a claim in her Charge Questionnaire, Plaintiff did not properly or clearly present a sexual harassment claim in her Intake Questionnaire. Nowhere in the Intake Questionnaire does she mention that she was

subject to sexually offensive conduct in the workplace. Unlike the plaintiff in Sickinger, who verbally presented the full extent of her sex discrimination claim to the investigator, Cain fails to articulate what she told the investigator. (Plf Exh. C, ¶6).[5] *See* Vela, 218 F.3d at 665 (oral statements to EEOC representative not reflected in nor reasonably related to the charge actually filed are not adequate). Second, there is no evidence that the EEOC representative that assisted Plaintiff in any way misled Plaintiff into believing that she had properly filed a claim based upon sexual harassment. Finally, unlike the plaintiff in Sickinger who filed just one EEOC charge eight days after her termination that happened to not include her date of termination as the last date that discrimination occurred, Plaintiff filed *three* EEOC charges, none of which mention any facts supportive of a charge for sexual harassment, hostile work environment, or *any* of the incidents of alleged harassment that Plaintiff included in her complaint and amended complaint.

At least one purpose behind the rule that a Title VII plaintiff cannot bring claims in a lawsuit that were not included in the plaintiff's EEOC charges would be frustrated if the Court allows Plaintiff's sexual harassment claim to stand because Defendants did not receive notice from the EEOC of Plaintiff's purported sexual harassment concerns and, therefore, had no opportunity to respond to the EEOC and take corrective action. See Cheek, 31 F.3d at 500; Sitar v. Indiana Dept. of Transp., 344 F.3d 720, 726 (7th Cir. 2003). Although Plaintiff alleges that her supervisor was aware of the alleged sexual harassing conduct, and that she reported one or more instances to the HR Director, it is undisputed that the EEOC did not notify the City about Plaintiff's sexual harassment allegations nor make inquiry into possible claims of sexual harassment. (Defts' Exh. A, ¶ 25). As a result, it is also undisputed that

---

[5] In her affidavit, Cain says she "discussed sexual harassment" with the EEOC investigator but we have no idea what that means. Perhaps she uttered the words "sexual harassment" in cursory fashion as a throwaway line- much like she did in response to question 13 of her intake questionnaire.

there was no opportunity to take advantage of the EEOC's conciliatory role and settle the dispute through conference, conciliation and persuasion with the assistance of the EEOC. Moreover, the fact that Plaintiff alleges that her supervisor was present during some of the alleged instances of harassment and that she reported one or more instances to the HR director does not create a genuine issue of material fact that prevent summary judgment because such notice is not substitute for formal notice from the EEOC that Plaintiff considered her sexual harassment claim to be part of any of her three EEOC Charges. *See* Sitar, 344 F.3d at 726 (barring the plaintiff's sexual harassment and sex discrimination claims that were not included on the EEOC Charge alleging only retaliation **even though the plaintiff had previously filed an internal complaint of sex discrimination and sexual harassment with her employer**). (Emphasis added).

In conclusion, Plaintiff failed to exhaust her administrative remedies and summary judgment should be entered in Defendants' favor on any and all claims of sexual harassment.

> *B. The Undisputed Evidence Shows That The Conduct Alleged By Plaintiff Is Not Severe or Pervasive and Does Not Arise to a Hostile Work Environment.*

Plaintiff initially pointed to three alleged instances in her complaint and amended complaint to support a claim of a hostile work environment: (1) on March 23, 2012, Rabenstein stood in his underwear during work on March 23, 2012, and asked Plaintiff if she wanted to "tuck a buck?;" (2) on April 17, 2012, Rabenstein gave Plaintiff a photograph of himself and Burgess mooning a trail camera with their buttocks exposed to varying degrees; (3) shortly after April 17, 2012, Burgess asked several times if Plaintiff would like to look at his penis piercing. (Amd. Compl. ¶¶12-14).

However, Plaintiff described the alleged harassing conduct as follows in her Response: "photograph of co-workers exposing their buttocks, witnessing male co-workers

undressing and urinating in Plaintiff's presence, . . . remarks about a 'penis ring' and implication that Plaintiff was a stripper made by Rabinstein and Burgess." However, Plaintiff has not designated evidence to support all of these allegations. For example, Plaintiff's designated testimony fails to show that Burgess asked on more than one occasion if she wanted to see his penis piercing.[6] Even if this Court assumes that Burgess asked Plaintiff if she wanted to see his penis piercing, there is no evidence designated to support that he asked Plaintiff more than one time.

The evidence designated by Plaintiff supports the following alleged instances of sexual harassment: (1) Plaintiff observed Kevin Rabenstein in his underwear and he asked her if she wanted to "tuck a buck,"[7] (2) Plaintiff was handed a (grainy) copy of two photographs depicting two PCR employees mooning a camera with their buttocks exposed to varying degrees, and (3) Burgess asked Plaintiff if she wanted to see his penis piercing (assuming the Court even considers this due to Plaintiff's failure to properly designate and support such assertions).[8]

In Defendants' initiating brief, Defendants explained that Plaintiff could not establish a prima facie case of sexual harassment under Title VII because she is unable to show that

---

[6] Instead, Plaintiff's designated deposition testimony shows that she *complained to* Sarah Beach about Burgess asking her if she wanted to see his penis piercing.

[7] Plaintiff designated deposition testimony from Eldon Cook, Jr. indicating that he observed employees (nothing designated to show whether the employees were male and/or female) in their underwear in Plaintiff's presence, but should not be considered because Cook's testimony is directly contradicted by Plaintiff's deposition testimony on this issue. Plaintiff testified that she had only seen Rabenstein in his underwear. (Defts' Exh. B, pp. 244-248).

[8] The Court should not consider Paragraph 13 of Plaintiff's Affidavit which indicates that she and Cook witnessed male employees urinating in the parking lot because Plaintiff previously testified in a deposition and was asked to recount all conduct that had occurred in her workplace that she found to be offensive and she did not indicate that she had ever witnessed male employees urinating in the parking lot of their workplace. (Defts' Exh. B, p. 259:7-10). Moreover, although Cook indicated in his affidavit that male employees had urinated in Plaintiff's presence, the context of the male employees urinating is unknown as is whether Plaintiff actually *witnessed* a male employee urinate.

alleged conduct at issue was sufficiently severe or pervasive to create a hostile work environment. Simply put, the conduct alleged by Plaintiff in her amended complaint, although likely offensive to some, is not sufficiently severe or pervasive to be actionable sexual harassment. In making this argument, Defendants assumed that Plaintiff would designate evidence to support the assertions that she made in her amended complaint; however, Plaintiff failed to do so. Accordingly, it is now even more of a stretch for Plaintiff to persuade this court that three isolated incidents amount to actionable sexual harassment.

Defendants cited to several other analogous sexual harassment cases including Baskerville, Gleason, and Rogers to show that incidents alleged by Plaintiff in her amended complaint do not create the kind of work environment that Title VII prohibits. (Citations omitted). (See Defendants' Brief, pp. 14-16). In response, Plaintiff cited to one case, Cerros v. Steel Techs., Inc., 288 F.3d 1040 (7th Cir. 2002), which is not analogous to the instant matter because it did not involve sexual harassment.

Baskerville, Gleason, and Rogers show that the conduct for which Plaintiff designated evidence to support, assuming it is true, is merely offensive and does not rise to the requisite level of actionable conduct under Title VII. Indeed, the conduct in Baskerville, Gleason, and Rogers was arguably worse than the evidence designated by Plaintiff. Unlike the comments in Baskerville, Gleason, and Rogers, which concerned the plaintiffs' physical appearances and/or sexual activity (i.e. "your breasts look bigger/nice," gestures to suggest masturbation, etc.), none of Rabenstein or Burgess' comments or alleged conduct concerned Plaintiff's physical appearance or sexual activity. At no time did any of the alleged offenders ask Plaintiff to perform sexual favors. Like the plaintiff in Baskerville, Rabenstein and Burgess did not threaten Plaintiff. There is also no evidence that Burgess or Rabenstein

made physical contact with her or attempted to do so. Finally, and most importantly, the instances alleged by Plaintiff and supported by evidence in the record were infrequent. When viewing the evidence in the light most favorable to Plaintiff, there were only *three* instances of crude or boorish behavior, offhand comments, and teasing which do not rise to the level of conduct that alters the terms and conditions of employment. The court in Baskerville referred to the alleged (minimum) of nine incidents of harassment as a "handful of comments spread over months" and found that they were not severe and pervasive enough to create an actionable hostile work environment. 50 F.3d at 431. The conduct in the instant matter was not severe and certainly was not pervasive. Again, while none of this conduct should occur in the workplace, it is not actionable sexual harassment under Title VII and summary judgment should be entered for Defendants.

**V.     Plaintiff Failed to Respond to Defendants' Argument that Plaintiff Cannot Make a Prima Facie Case of Gender Discrimination.**

Plaintiff alleged that she was discriminated against because of her sex when Defendants refused to hire her because she was a female. Defendants specifically moved for summary judgment on each of Plaintiff's gender discrimination claims. (Brief, pp. 17-24).

Plaintiff failure to respond to Defendants' Motion for Summary Judgment on the gender discrimination claims constitutes abandonment and waiver of that claim. *See* Palmer v. Marion Cnty., 327 F.3d 588, 597-98 (7th Cir. 2003), *citing* Laborers' Int'l Union of N. Am. v. Caruso, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived); Spellazza v. Indiana Dep't of Natural Res., 2010 WL 55565, at *5 (S.D. Ind. Jan. 4, 2010) (plaintiff waived claim by not contesting defendants' argument regarding claim in motion for summary judgment).

Not only has Plaintiff waived the issue, but summary judgment should be entered on

Plaintiff's gender discrimination claims, for the reasons explained in pages 17-24 of Defendants' initiating brief.

**VI.     Summary Judgment Should Be Entered for Defendants on Any Alleged Retaliation Claim.**

   A.     *The Court Should Not Consider Plaintiff's New Theory of Retaliation.*

Until she filed her Response, Plaintiff had not alleged that she was retaliated against for complaining about being sexually harassed. The *only* allegation in the Amended Complaint regarding retaliation is contained in paragraph 30 in which Plaintiff alleges that Defendants retaliated against her "*because she was female*." (emphasis added).[9] Now, Plaintiff alleges that she was disciplined, laid off, and not called back for work in 2013 because she complained to Gregory and Bonham about sexual harassment. (Response, p. 13). This Court should not consider Plaintiff's new theory made for the first time in response to Defendants' motion for summary judgment. *See* Trade Fin. Partners, LLC v. AAR Corp., 573 F.3d 401, 412 (7th Cir. 2009); Griffin v. Potter, 356 F.3d 824, 830 (7th Cir. 2004).

   B.     *Plaintiff Has Not Designated Evidence to Show Retaliation Under the Direct Method of Proof.*

Even if the Court considered Plaintiff's new theory of retaliation, summary judgment should be entered in Defendants' favor. A plaintiff must prove retaliation by using the direct method or the indirect, burden-shifting method. Plaintiff argues that she can establish retaliation under the direct method of proof. Under the direct method, the plaintiff must show that "(1) she engaged in statutorily protected activity; (2) she suffered an adverse action taken by the employer; and (3) [there was] a causal connection between the two." Tomanovich v. City of Indianapolis, 457 F.3d 656, 663 (7th Cir. 2006).

---

[9] As explained in Defendants' initiating brief, Defendants presumed the "retaliation" claim was actually part of her gender discrimination claim given that she referenced in her gender and made no specific averments to support a claim of retaliation.

-13-

A plaintiff can make a prima facie case of retaliation under the indirect method by showing the same four elements discussed, supra. If she can establish a prima facie case, then the burden shifts to the employer to present evidence of a non-discriminatory reason for its employment action. If the employer presents a non-discriminatory reason, then the burden shifts back to the plaintiff to prove that such reason(s) are pretextual. Id.

>     i. *Plaintiff Failed to Designate Evidence To Support Her Assertions that She Complained to Bonham, Gregory, and Beach about Sexual Harassment.*

Plaintiff alleges that the she complained to Bonham and Gregory about Rabenstein and Burgess sometime in April 2012, however, she has not designated evidence to support such statements. Plaintiff's designated evidence shows that Plaintiff testified that Rabenstein handed her the photographs at issue in 2012, and that Plaintiff thought "that it might have been [in] April or sometime. (Exh. A, p. 40:7-13). Thus, there is no designated evidence that Plaintiff complained to Gregory about sexual harassment in April 2012. Plaintiff testified that she took the photographs to Bonham, but that she could not recall when she took them to Bonham, other than to say "it wasn't long after." Id. at p. 44:2-5. Although Plaintiff testified that Gregory was present when Rabenstein gave the photographs to Plaintiff, there is no designated evidence to support that Plaintiff actually complained to Gregory about the photographs.

Moreover, there is no designated evidence to support that Plaintiff complained about the photographs to Beach in June 2012. In fact, Plaintiff specifically testified that she could not recall when she told Beach about the photographs. (Exh. A, pp. 211:22- 212:20). The undisputed evidence shows that Plaintiff only mentioned that the photographs to Beach *after* Plaintiff had been disciplined. (Defts' Exh. E, p. 44:8-46:10, 47:13- 19). Thus, the

designated evidence supports only that Plaintiff told Bonham about the photographs "not long after" she was handed them at some point in 2012 (perhaps around April), and that Plaintiff mentioned the photographs to Beach after Plaintiff had already been disciplined.

> ii. *Plaintiff Did Not Suffer An Adverse Employment Action Until Her Employment Ended Upon the Conclusion of the PCR Season in October 2012.*

Plaintiff alleges that she suffered the following adverse employment actions: (1) disciplinary write-ups, (2) "laid off" at the end of the season while other employees remained employed, and (3) not being called back to work the following year. (Response, p. 16). First, the court should disregard Plaintiff's assertions that she was "laid off" at the end of the season while other employees remained employed and that she was not called back to the work in 2013 because Plaintiff did not designate any evidence to support such claims. The undisputed evidence shows that Plaintiff was laid off at the end of the PCR season in October 2012, as were other PCR employees. (Defts' Exh. C, ¶ 20). In fact, Gregory laid off and/or terminated a few employees *prior* to ending Plaintiff's employment. (Deft's Exh. C, ¶ 20, Exh. 9). Moreover, Plaintiff designated no evidence to support that she applied for and was denied employment at PCR in 2013.

Although Plaintiff was disciplined via written warnings on July 5 and 16, 2012, the warnings do not constitute adverse employment action because the financial terms of her employment were not diminished, she was not transferred resulting in a significant reduction in her career prospects, and the conditions in which she worked did not change. *See* <u>Nichols v. Southern Illinois University- Edwardsville</u>, 510 F.3d 772, 780 (7th Cir. 2007). Moreover, contrary to Plaintiff's representations in her Response, Plaintiff's first written warning was for poor work effort, poor attitude and creating a hostile work environment (yelling, cursing,

and being disrespectful to other employees) and her second written warning was for failure to follow written or verbal directions of management (approaching co-worker Steven Chrisp, advising him that he was building walk-boards for a pier incorrectly, and instructing him on how she felt that the walk boards should be constructed a few days after Beach told Plaintiff to focus on doing her job and not to tell co-workers what to do or how to do it since she was not a supervisor. (Defts' (Exh. A, ¶¶ 22-24, Exhs. 12-13; Exh. C, ¶¶ 12-15 and Exh. 3-6). Recall that Gregory and Beach met with Plaintiff on August 1, 2012, to discuss Plaintiff's second written warning, at which time Plaintiff indicated and wrote on the Disciplinary Action Form that she "did not tell *that boy* [Chrisp is an African-American male] what to do." (Defts' Exh. A, ¶ 24, Exh. 13; Exh. B, pp. 118:7-119:20, Exh. 3; Exh. C, ¶ 16).

> iii. *There is No Causal Connection Between Plaintiff Telling Bonham and Beach about the Photographs and Plaintiff's Employment Ending Upon the Conclusion of the PCR Season*.

It is somewhat difficult to respond to Plaintiff's assertions regarding a causal connection because Plaintiff makes several representations for which she does not provide a citation to the record and/or are not supported by any designated evidence. She also sets forth several allegations that do not appear elsewhere in her brief. First, the undisputed evidence shows that there was no "pattern" of disciplining Plaintiff. Plaintiff was disciplined on two occasions- July 5 and 6, 2012. (Defts' Exh. C-3, C-6). Plaintiff did not designate any evidence to support her assertion that she complained to Gregory about sexual harassment in April 2012. Plaintiff then asserts on page 17 that she complained to Bonham and Gregory about the hostile work environment created by Rabenstein and Burgess in March 2012. There is no designated evidence to support such assertion. Moreover, as explained above, Plaintiff has not designated evidence to support that she complained to Bonham about sexual

harassment in April 2012. There is no evidence designated to support Plaintiff's assertion that she was told by her supervisor that she was "the best candidate" for the full-time position for which applied. (Response, p. 17).

A plaintiff can show a causal connection by showing that her protected activity was a 'substantial or motivating factor' in the adverse employment action taken against the plaintiff. Coleman v. Donahoe, 667 F.3d 835, 859 (7th Cir. 2012). This can be done via direct evidence, such as an employer's admission, or by presenting a 'convincing mosaic of circumstantial evidence' that would allow the same inference without an employer's admission. Id. at 860.

There are three recognized three categories of circumstantial evidence available to a plaintiff using the "convincing mosaic" approach: (1) 'suspicious timing, ambiguous statements oral or written, ... and other bits and pieces from which an inference of [retaliatory] intent might be drawn;' (2) 'evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently;' and (3) 'evidence that the employer offered a pretextual reason for an adverse employment action.' Id.

It is not exactly clear which category or categories that Plaintiff seeks to utilize to establish a causal connection. At most, Plaintiff has designated evidence to show that (1) she complained to Bonham about the photographs at some point before Plaintiff was terminated in 2012, (2) Plaintiff mentioned the photographs to Beach at undetermined point in 2012 (but after she had already been disciplined), (3) that Plaintiff filed an EEOC Charge on August 30, 2012, and (4) that Plaintiff's employment ended on October 22, 2012, at the end of the PCR season.

Plaintiff does not have direct evidence, so she must utilize the convincing mosaic approach. First, Plaintiff is unable to make an argument that the timing is suspicious between when she complained about the photographs to Bonham or Beach and when her employment ended, because there is no designated evidence to show exactly when she complained to either person. Even if we assumed that Plaintiff had designated evidence to support that she had complained about the photographs to Bonham in April 2012, there is no designated evidence to support that Bonham had anything to do with the decision to end Plaintiff's employment at the end of the PCR season. Moreover, even if we assumed that Plaintiff had designated evidence to support that she had complained about the photographs to Beach in June 2012, four months passed before Gregory ended Plaintiff's employment. *See* Tomanovich, 457 F.3d at 665 (two month temporal connection, without more, was not enough to establish a causal connection); Longstreet v. Ill. Dep't. of Corr., 276 F.3d 379, 384 (7th Cir. 2002) (holding that a four month temporal connection was insufficient to establish causal connection); Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 919 (7th Cir. 2000) (three month temporal connection alone could not reasonably support a causal connection for a retaliation claim).

Finally, the temporal gap between Plaintiff's EEOC Charge on August 30, 2012, and when her employment ended on October 22, 2012, is also not enough to establish a causal connection. Interestingly, Plaintiff's new theory of retaliation appears to be based upon the two written warnings that she received allegedly after engaging in the protected activity of complaining about sexual harassment (not supported by the record); however, the EEOC Charge filed by Plaintiff on August 30, 2012, did not mention sexual harassment or *any* type of retaliation based upon any complaints about sexual harassment. Plaintiff's argument is

further weakened considering that the undisputed evidence shows that Plaintiff's employment ended on October 22, 2012, because it was the end of the PCR season, and that other employees' were terminated at the same time. (Defts' Exh. C, ¶ 20). In fact, some employees were laid off *prior* to Plaintiff. (Deft's Exh. C, ¶ 20, Exh. 9). There is no inference of retaliatory intent that can be drawn from the designated evidence.

Moreover, Plaintiff has not proffered any evidence to show that similarly situated employees were treated differently and or that the City offered a pretextual reason for an adverse employment action, nor is there is any evidence in the record to support such claims. As explained above, several similarly situated employees were laid off around the time that Plaintiff was laid off and a few were laid off *prior* to Plaintiff. Additionally, two male part-time laborers (Darryale Hawkins and Curtis Young) were terminated during the 2012 season after their incidents of misconduct. (Exh. C, ¶¶ 20-22, Exhs. 7-8). There is no designated evidence to support that Plaintiff's employment ended on October 22, 2012, because she complained to Bonham or Beach about the photographs that were allegedly handed to her or because she filed an EEOC Charge on August 30, 2012. Plaintiff had already received two written warnings by the time that she filed her EEOC Charge. Simply put, Plaintiff's employment ended on October 22, 2012, like other employees, because it was the end of the 2012 PCR season.

In conclusion, Plaintiff cannot show a causal connection between any protected activity and the end of her employment because she cannot show that such alleged protected activity played *any* factor in the decision to end her employment at the end of the PCR season. Accordingly, summary judgment must be entered in Defendants' favor on any retaliation claim.

## VII. Conclusion

Based on designated evidence and the foregoing arguments, the Defendants are entitled to summary judgment on all of Plaintiff's claims.

Respectfully submitted,

**COOTS, HENKE & WHEELER, P.C.**


/s/ Brandi A. Gibson
Matthew L. Hinkle, #19396-29
Brandi A. Gibson, #26373-29
*Attorneys for City of Muncie and
Muncie Parks Department*

## CERTIFICATE OF SERVICE

I hereby certify that on the **21st day of November, 2014**, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operations of the Court's electronic filing system. Parties may access this filing through the Court's system.

John R. Panico
**PANICO LAW LLC**
jpanico@discriminationlawgroup.com


/s/ Brandi A. Gibson
Matthew L. Hinkle, #19396-29
Brandi A. Gibson, #26373-29


**COOTS, HENKE & WHEELER, P.C.**
255 East Carmel Drive
Carmel, IN 46032
(317) 844-4693 - telephone
(317) 573-5385 - facsimile
Email: mhinkle@chwlaw.com
        bgibson@chwlaw.com